UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY DELISLE,

        Plaintiff,

v.                                         CIVIL CASE NO. 04-60163
                                          HON. MARIANNE O. BATTANI
SUN LIFE ASSURANCE COMPANY
OF CANADA, INC.,

        Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD AND GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

**I.    INTRODUCTION**

Before the Court are Plaintiff's and Defendant's Cross Motions for Judgment on the Administrative Record (Doc. ## 30 & 31). Plaintiff and Defendant have both filed response and reply briefs. After exhausting all available administrative remedies, Plaintiff filed suit challenging Defendant's denial of her application for Long-Term Disability ("LTD") Benefits. Defendant denied benefits because Plaintiff was not covered on the date of the onset of her disability. Plaintiff asserts that she was in fact covered by the policy on the date of her disability, that Defendant has waived the right to challenge her medical evidence of disability, and that Defendant's decision should be reviewed *de novo* because it was influenced by a conflict of interest.

Plaintiff began working for Sidney Krandall & Sons Jewelers ("Krandall") on January 8, 1996. Plaintiff was a participant in a group disability insurance plan underwritten and

administered by Defendant. While employed by Krandall, Plaintiff was involved in two separate automobile accidents. The first occurred in January 1998. As a result of that accident, Plaintiff sustained serious head, neck, and back injuries for which she eventually underwent a spinal fusion. On August 24, 2000, Plaintiff was involved in another automobile accident where she suffered from various injuries, including a closed head injury, which she alleges caused her health to spiral downward so that she could no longer function as Director of Operations and also led to her total disability.

On the morning of April 17, 2002, Stanford Krandall, Krandall's President, asked Plaintiff to meet him at an offsite location. There, Stanford Krandall terminated Plaintiff's employment because of poor performance. Plaintiff was paid for the entire day of April 17.

Plaintiff admitted to her therapist, Diane P. Cushing, M.A., L.P.C., during a session that same day that:

> S: Client states she got fired today. O: Scattered, consistent in thought. A: Frustration evident. Firing based on personality basis vs. job performance. P: Client will contact attorney for possible   discrimination and 6 weeks "additional"
> severance.

Administrative Record ("AR") 166. Following her termination from Krandall, Plaintiff obtained unemployment benefits, claiming that she was let go due to "lack of work." Plaintiff was also employed for a short time prior to submitting her claim for disability benefits. In September of 2002, Plaintiff told her therapist that she was frustrated with her new job, that she wanted to quit, and that she was ultimately terminated because she refused to work excessive hours. AR 170. Plaintiff filed a claim for LTD benefits with Sun Life on March 6, 2003. In filing her claim for LTD benefits, Plaintiff submitted attending physician statements from various treating physicians. The doctors opined, that in their professional medical judgments, Plaintiff was

totally disabled from working as of April 17, 2002.  AR 0196, 0994.  The opinions were based on both  physical traumas, as well as, psychological ramifications from her impaired physical condition.  According to Dr. Branca, Plaintiff's chronic pain levels "significantly interfere with functioning," and undermined her "capacity to perform at chosen vocation."  AR 0666.  Dr. Branca also noted that Plaintiff's prescribed medications reduced her "mental efficiency to some degree."  Id.  However, Dr. Ho reported that he was uncertain how the disability date was determined, and Dr. Branca, did not begin treating Plaintiff until July 10, 2002, three months after the claimed date of disability.  AR 941, 1172.  Further, at no time during the three visits with Dr. Ho prior to the claimed disability date did he state or even suggest that Plaintiff was totally disabled or unable to perform the duties of her occupation.  AR 521- 529.

Plaintiff also filed for Social Security Disability Insurance Benefits ("SSDI").  Plaintiff was granted SSDI and the Social Security Administration determined that Plaintiff was totally disabled as of April 17, 2002.

Sun Life denied Plaintiff's claim for LTD benefits in a letter dated March 28, 2003.  The ground for the denial was that Plaintiff was not insured on the date of the onset of her disability.  AR 854-57, Defendant's Motion for Entry of Judgment, pg. 7.  On appeal, and after consideration of additional information submitted by Plaintiff's counsel, Sun Life affirmed its decision to deny benefits in a February 3, 2004 letter.  In the letter denying Plaintiff's appeal, Defendant reiterated the reason for denial, but recognized that Plaintiff was insured on the date of her claimed disability.  AR 0910.  This suit followed.

## II.     STANDARD OF REVIEW

When a benefit plan gives the plan administrator discretion to determine eligibility, the court must review the administrator's decisions under an arbitrary and capricious standard. Wilkins v. Baptist Health Care Sys. Inc., 150 F.3d 609, 619 (6th Cir. 1998). A plan administrator's decision will be upheld under the deferential arbitrary and capricious standard if that decision is "rational in light of the plan's provisions." University Hosp. v. Emerson Elec. Co., 202 F.3d 839, 846 (6th Cir. 2000). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989). "[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action." Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir. 2000).

**III.    ANALYSIS**

    **A.    The Sun Life Insurance Policy Vests Discretion in Sun Life.**

Plaintiff argues that because Sun Life did not specifically reserve the right to construe the terms of the policy, that interpretations concerning the policy's terminology should be reviewed *de novo*. "In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed.2d 80 (1989), the Supreme Court stated that an administrator's decision to deny benefits is reviewed under a *de novo* standard unless the plan provides the administrator with 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Hoover v. Provident Life and Acc. Ins. Co., 290 F.3d 801, 807 (6th Cir. 2002). Therefore, because of the use of the disjunctive "or," if a plan provides an administrator with discretion to determine either eligibility for benefits, or discretion to construe the terms of the plan, then the administrator's decision will be reviewed under the arbitrary and capricious standard. In other words, as long as

4

the plan grants the administrator discretion in either area, then the deferential standard will be employed. Plaintiff concedes that the policy in question grants the administrator discretion when determining eligibility for benefits, therefore, the administrator's decision to deny benefits because Plaintiff was not covered will be reviewed under the arbitrary and capricious standard.

      **B.     Defendant's Interpretation of the LTD Plan's Eligibility Standard is Arbitrary and Capricious.**

"When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense." Williams, 227 F.3d at 711. However, "to the extent that the Plan's language is susceptible to more than one interpretation, we will apply the 'rule of *contra proferentum*' and construe any ambiguities against Defendants as the drafting parties." Univ. Hosp. of Cleveland v. Emerson Elec. Co. and Emerson Elec. Co. Benefit Plan, 202 F.3d 839, 847 (6th Cir. 2000). Further, "an administrator lacks discretion to rewrite the Plan." Saffle v. Sierra Pacific Power Co., 85 F.3d 455, 460 (9th Cir. 1996). Accord Florence Nightingale Nursing Serv., Inc. v. Blue Cross/ Blue Shield of Alabama, 41 F. 3d 1476, 1484 (11th Cir.) (holding that a "claims administrator's decision was arbitrary and capricious where new requirements for coverage are added to those enumerated in the plan."); Mitchell v. Eastman Kodak Co., 113 F. 3d 433, 442 (3d Cir. 1997)(concluding it was arbitrary and capricious for an administrator to require "objective medical evidence" to prove disability when Plan contained no such requirement). The Court "should also take into account, however, the fact that [the insurance company] is acting under a conflict of interest because it both funds and administers the plan." Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 457 (6th Cir. 2003). The Court finds that Defendant's denial of

benefits was arbitrary and capricious.

Any argument that Plaintiff was not disabled, nor claimed to be disabled immediately after her termination, will not be considered when determining whether Defendant's decision was arbitrary or capricious because that was not the basis for denial of benefits. Defendant denied Plaintiff's application for benefits because:

> . . . her employment terminated on April 17, 2002. Thus, her insurance under this Group Policy terminated on that date as well. Because she was not insured under this Group Policy on the claimed date that disability commenced and therefore on any date thereafter, she cannot be considered eligible for benefit payments.

AR 856, Denial of LTD Benefits Letter. In other words, Defendant denied the LTD benefits because it believed Plaintiff was not insured on the day Defendant assigned as the date of disability. Defendant believes Plaintiff became disabled on the day after her termination because that was the first day she suffered a loss of income. However, Defendant admitted that Plaintiff was covered on the date of her termination, the date her treating physicians assigned as her date of disability: ". . . she received her full salary on the date her employment terminated, April 17, 2004 [sic]. Please note, effective midnight of the same day, her insurance terminated and she was no longer covered . . ." AR 0910. "Because she was not insured under this Group Policy on the claimed date that disability commenced and therefore on any date thereafter, she cannot be considered eligible for benefit payments." AR 856. "Thus, Sun Life's denial was based upon the Policy provision that Plaintiff's eligibility for insurance ceased upon the termination of her employment, which occurred on April 17, 2002." Reply Brief in Further Support of Defendant's Motion for Judgment on the Administrative Record, at pg. 5.

In order for Plaintiff to be eligible for LTD benefits under the plan, she had to be "Totally Disabled."  "Totally Disabled" is defined by the plan to mean:

> Total Disability or Totally Disabled means during the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.  After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience.
> . . .
> To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability, Partial Disability or a combination of Total or Partial Disability.

AR 0011, Group Term Insurance Policy.  The Elimination Period:

> means a period of continuous days of Total or Partial Disability for which no LTD Benefit is payable.  The Elimination Period is shown is Section I, Schedule of Benefits and begins on the first day of Total or Partial Disability.

Id., at 0008.

Defendant, initially denied benefits because, "Ms. DeLisle was not *Actively at Work* on April 18, 2004, [sic] when she first experienced a loss of income."  AR 0910, Letter to Attorney John Conway (emphasis in original).  The letter went to explain that Plaintiff's appeal was properly denied because, "she was not *Actively at Work* on April 18, 2003, [sic] the date she first experienced a loss of income."  Id., at 0911.  Under the arbitrary and capricious standard, a Plan Administrator must only give a reasoned explanation in light of the plan's provision; however, "an administrator lacks discretion to rwrite the Plan."  Saffle, 85 F.3d at 460.  The Court agrees that a "claims administrator's decision [is] arbitrary and capricious where new requirements for coverage are added to those enumerated in the plan."  Florence Nightingale Nursing Serv., Inc.,

41 F. 3d at 1484 (11th Cir.). Here, the Plan Administrator added a requirement that a claimant is required to suffer a loss of income, which is not a defined term in the plan, in order to be eligible for benefits. Nothing in the plan language supports such a reading. Under the terms of the plan in question, a covered employee must be "Totally Disabled" during the "Elimination Period" as defined by the plan. "Totally Disabled" is not defined in terms of loss of income anywhere in the policy, nor is eligibility for benefits hinged upon a loss of income. Neither is there a requirement that a claimant become disabled while performing job duties; therefore, there is no basis to deny benefits because Plaintiff was uninsured a day after the alleged date of disability. Because Defendant admitted that Plaintiff was covered on the date of her claimed disability and because there is no requirement in the plan language that requires a claimant to suffer a loss of income before that claimant can be considered "Totally Disabled," there is no reasoned explanation for Defendant's denial of benefits. Therefore, Defendant's decision to deny Plaintiff benefits because she did not suffer a loss of income until April 18, 2002, is arbitrary and capricious.

      **C.    Defendant Did Not Intentionally Relinquish Its Right to Contest Plaintiff's Claimed Date of Disability.**

Plaintiff contends that this Court should order an award of benefits because Defendant waived its right to contest Plaintiff's disability when it denied benefits because she was uninsured. Defendant, on the other hand, contends that any state law that relates to an ERISA covered plan is preempted by ERISA's regulations. However, federal courts may apply federal common law where,

> . . . ERISA is "silent or ambiguous," Muse v. IBM, 103 F.3d 490, 495 (6th Cir.1996), where there is an "awkward gap in the statutory scheme," Tassinare v.

> Am. Nat'l Ins. Co., 32 F.3d 220, 225 (6th Cir.1994), or where it may "be said that federal common law is essential to the promotion of fundamental ERISA policies." Id.

Local 6-0682 Int'l. Union of Paper v. Nat'l Indus. Group Pension, 342 F.3d 606, 609 (6th Cir. 2003).  See also Flacche v. Sun Life Assur. Co. of Canada (U.S.), 958 F.2d 730, 735 (6th Cir. 1992), Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc., 362 F.3d 877, 880 (6th Cir. 2004).  Because ERISA provides no guidance on waiver of defenses in suits involving denial of benefits, federal courts may apply federal common law to resolve the issue.  "When interpreting ERISA plans, federal courts apply 'general rules' of contract law as part of the federal common law."  Cassidy v. Akzo Nobel Salt, Inc., 308 F.3d 613, 615 (6th Cir. 2002).  "Waiver, as defined by federal common law, requires an 'intentional relinquishment of a known right.'  Larkins v. NLRB, 596 F.2d 240, 247 (7th Cir. 1979)."  Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1217 (6th Cir. 1987).  Applying these principles, there is nothing in the communications between the parties that evidence Defendant's intention to relinquish its right to contest Plaintiff's claimed date of disability, or its right to pay benefits only to those it determines are totally disabled as defined by the policy.  Nor did Defendant "'intentionally to do an act inconsistent with claiming'" its right to contest Plaintiff's claimed disability.  Chamberlain v. City of Saginaw, 97 N.W. 156, 157 (Mich. 1903).  Finally, Plaintiff will suffer no damage or detriment to her claim if it is properly reviewed by the Plan Administrator.

**IV.   CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record is **GRANTED** in part and **DENIED** in part. It is **FURTHER ORDERED** that Defendant's Motion for Judgment on the Administrative Record is **GRANTED** in part and **DENIED** in part. It is **FURTHER ORDERED** that the case will be **REMANDED** to the Plan Administrator to determine if Plaintiff was disabled, as defined by the policy, on April 17, 2002.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: **September 30, 2005**

### CERTIFICATE OF SERVICE

Copies of this Order were served upon John J. Conway, Barton C. Rachwal, and Francis R. Ortiz on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt

CASE MANAGER